**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TYRONE J. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 10762 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MAJOR COLEMAN III, DARRYL HOPE, | ) | |
| JACK DALEY, GREG OKON, RAMIRO | ) | |
| MONTES, JAMES RANDALL, WILLIAM | ) | |
| ALEXANDER, M. GAINER, DAVID | ) | |
| NEDVED, JOSE NEVAREZ, | ) | |
| INVESTIGATOR IVERSON, ASA ANGELA | ) | |
| CARLISLE, ASA MIKAH SOLINAS, | ) | |
| UNKNOWN POLICE OR COOK COUNTY | ) | |
| STATE'S ATTORNEY INVESTIGATORES, | ) | |
| UNKNOWN COOK COUNTY | ) | |
| PROSECUTORS, and the VILLAGE OF | ) | |
| DOLTON, S. SUBURBAN MAJOR CRIMES | ) | |
| TASK FORCE, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Tyrone J. Smith ("Smith") spent seven years in jail for the murder of Tyrone D.

Smith (the "Deceased"), which he did not commit.[1] After the state court vacated Smith's

conviction, he filed this civil rights lawsuit against various police officers and prosecutors

involved in the investigation that led to the charges against him: Major Coleman III, Darryl

Hope, Jack Daley,[2] Greg Okon, Ramiro Montes, James Randall, William Alexander, M. Gainer,

David Nedved, Jose Nevarez, and Investigator Iverson (the "Defendant Officers); Assistant

State's Attorneys Angela Carlisle and Mikah Solinas (the "Defendant Prosecutors"); the Village

---

[1] Smith and the Deceased are not related, despite sharing the same name.

[2] In light of Daley's death, the Court has substituted the executor of his will, Kimberly Daley, for Daley.
*See* Docs. 38, 48.

of Dolton ("Dolton"); the South Suburban Major Crimes Task Force (the "Task Force"); and various unknown police, investigators, and prosecutors. Smith brings claims for malicious prosecution and prolonged detention, fabrication of evidence, *Brady* violations, conspiracy, and failure to intervene pursuant to 42 U.S.C. § 1983. He also brings state law claims for malicious prosecution, intentional infliction of emotional distress, willful and wanton conduct, and civil conspiracy.[3] Seven of the Defendant Officers—Daley, Gainer, Iverson, Montes, Nedved, Nevarez, and Okon (the "Moving Defendants")—have filed motions to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Smith has not provided the Moving Defendants with adequate notice of the claims asserted against them, the Court dismisses them from this case but gives Smith leave to file an amended complaint.

## BACKGROUND[4]

After a night of clubbing at the N'Zuri nightclub in Dolton, Illinois, Smith and the Deceased left the club separately in the early morning hours of October 25, 2015. Smith and the Deceased, along with their respective groups of friends, did not know each other and had no interactions at the club. Smith and his friends had parked their car in a parking lot behind the MC National Bank parking lot, where many other clubgoers had also parked. Smith, Umar Shaheed, and Christopher Oliver stopped at the drive through ATM to allow Shaheed to

---

[3] Not relevant to the present Opinion, Smith also raises *respondeat superior* and indemnification claims against the agencies that employed the individual defendants, although he has only named Dolton and the Task Force as Defendants. To the extent Smith seeks to pursue *respondeat superior* and indemnification claims against any other municipalities, he should specifically name them as Defendants in any amended complaint.

[4] The Court takes the facts in the background section from Smith's complaint and presumes them to be true for the purpose of resolving the Moving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court does not address the parties' arguments as to the admissibility of the documents that Gainer, Iverson, Montes, and Nevarez attached to their motion to dismiss because the Court need not consider these documents in resolving the motions before it.

withdraw money on the way to their car. As Smith stood at the ATM with his friends, they heard a crash. Smith's sister shouted that someone had hit Smith's car. Smith and Oliver ran to see what happened. Oliver used his phone's flashlight to assess the damage to the car. Smith and his friends then saw a physical fight break out in the bank parking lot area. Someone fired gunshots, the Deceased fell to the pavement, and Smith and his friends quickly left the parking lot in Smith's car.

Kenya Dennis reported the shooting to 911 as she left the scene. She described the shooter as having dreadlocks and fleeing with three others in a silver car. Smith did not have dreadlocks and was driving a blue Jeep SUV.

The Dolton Police Department ("DPD") led the investigation into the Deceased's murder, with assistance from the South Suburban Major Crimes Task Force ("Task Force"). The Defendant Officers all belonged to the Task Force and investigated the case. More specifically, Coleman and Hope belonged to the DPD, Daley belonged to the Burnham Police Department, Okon belonged to the Oak Forest Police Department, Randall to the Calumet City Police Department, Alexander to the Posen Police Department, and Nedved to the Blue Island Police Department. Gainer, Iverson, Montes, and Nevarez were Illinois State Police officers.

As part of the investigation into the murder of the Deceased, the Defendant Officers reviewed video footage and interviewed dozens of potential witnesses who left the N'Zuri nightclub the night of the shooting. The video footage from the bank parking lot showed Smith with his two friends at the ATM and then Smith and a friend running toward the parking lot after a commotion broke out. It further showed young men pushing and shoving, flashes, the Deceased falling to the ground, and everyone in the parking lot running for cover and fleeing. The video footage had no sound.

Investigators did not obtain a consistent description of the shooter. Dennis indicated that she did not see the shooter's face because his back was to her, but that she thought that two twin brothers she had met inside the club were involved.

Investigators detained Nathanial Allen at the DPD for several days. He described the altercation and identified the shooter as having dreadlocks and wearing a red sweater. Coleman and Daley attempted to have Allen identify Smith as the shooter, but Allen repeatedly told Defendants that he did not get a look at the shooter. Defendants told Allen they knew Smith was the shooter and that other witnesses had identified Smith, even though this was not true. After holding Allen for three days, Defendants released him. Another witness, Aerial Haynes, described the shooter as wearing a black hoodie. Smith did not have on a red sweater or a black hoodie the night of the shooting. Randall, Montes, Nedved, Gainer, Iverson, Daley, Nevarez, and Okon interviewed other eyewitnesses, including Gail Allen, Floyd Plant, Christopher Oliver, Shaheed, and Vivian White. The witnesses provided information that tended to exculpate Smith, and no witness identified Smith as the shooter. Defendants also did not conduct a single identification procedure during their investigation. Nonetheless, Defendants attempted to influence and pressure witnesses to identify Smith, allegedly because Coleman knew that Smith had previously been accused of a gun offense.

On October 30, 2015, the Defendant Prosecutors approved murder charges against Smith. The Defendant Officers then obtained an arrest warrant for Smith. Coleman made false statements in support of the arrest warrant, specifically indicating that multiple interviews and video identified Smith as the perpetrator. The Defendant Prosecutors reviewed the statements in support of the arrest warrant. Almost two years passed before officers arrested Smith on October 5, 2017. Defendants then interrogated Smith and his girlfriend, White. They threatened to

charge White and take her kids away if she did not implicate Smith as the shooter, but she repeatedly told them that she did not see Smith commit the shooting. Defendants then charged White with harboring a fugitive.

On October 24, 2017, Hope testified before the grand jury, stating that witnesses had identified Smith as the shooter. He further testified that the investigation revealed that Smith's friends got into a fight with the Deceased's friends, the parties separated, and then Smith approached and fired a gun multiple times at the Deceased.

In pretrial discovery, Defendants did not provide Smith with the information that witnesses gave that tended to exonerate Smith. Before trial, Defendants, with Assistant State's Attorneys Reardon and Patarrozzi, met with Dennis to prepare her testimony. They fabricated an identification of Smith despite the fact that Dennis told investigators in the days after the shooting that she did not see the shooter's face and could not make an identification. Defendants, Reardon, and Patarrozzi showed Dennis a still photo of Smith from the ATM video surveillance and told her that Smith was the shooter, that forensic evidence backed this up, and that other witnesses had identified him.

The case proceeded to trial on February 10, 2020. Dennis provided an identification of Smith, and Coleman testified that he interviewed over fifty witnesses, with numerous individuals identifying Smith as the shooter. Coleman also testified that physical and DNA evidence implicated Smith, and that investigators had considered but excluded two other individuals as the perpetrator. On February 14, 2020, a jury convicted Smith of murder based on Dennis' and Coleman's testimony.

Smith filed post-trial motions, arguing among other things that he should never have been indicted and that his conviction was based on fabricated and false testimony. After an

evidentiary hearing, on June 8, 2023, the state court judge vacated the verdict and ordered a new trial. Although the State indicated it would retry the case, the state court granted Smith's motion to dismiss on January 8, 2024, finding that Hope provided false and misleading testimony to the grand jury and that no probable cause justified the charges against Smith. The State moved to reconsider, which the court denied on April 16, 2024. On May 16, 2024, Hope, through his own personal counsel, moved to intervene and filed his own motion for reconsideration, arguing that he had a personal interest in the case because the court's finding would lead to his placement on a *Brady* list. On June 24, 2024, without Smith or his counsel's presence, the state court allowed Hope to intervene and modified the dismissal order. Smith moved to vacate that order the following day. On September 18, 2024, the state court reaffirmed the part of the order allowing Hope to intervene but entered a new dismissal order, finding that the admission of Hope's false and misleading testimony to the grand jury violated Smith's due process rights. The State did not appeal and did not attempt to reindict Smith. Smith spent approximately seven years in Cook County Jail.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th

Cir. 2014).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The Moving Defendants raise various arguments as to why the Court should dismiss Smith's claims against them.  The Court need only address one at this time: that Smith has not sufficiently pleaded the Moving Defendants' personal involvement to proceed against them in their individual capacities, instead grouping them all together and barely delineating any specific actions that any of them took individually.[5]

Under Rule 8, Smith need only provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a).  Rule 8(a) does not require Smith, "without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific [defendant]." *Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013).  Nonetheless, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Group pleading that refers to a group of defendants collectively suffices under Rule 8 when a plaintiff provides enough detail about the nature of the allegations to put each defendant on fair notice of the claims.  *See Sanders v. City of Chicago Heights*, No. 13 C 0221, 2014 WL 5801181, at *3 (N.D. Ill. Nov. 7, 2014) ("[A]ll that is required at this stage of the proceedings is

---

[5] This argument also applies to Alexander and Randall, the remaining two Defendant Officers who have not yet filed a responsive pleading.  Because Smith has had the opportunity to respond to the argument, the Court extends its analysis to Alexander and Randall as well.  *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 2011) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if a motion by one defendant is equally effective in barring a claim against other defendants and the plaintiff had an adequate opportunity to respond to the motion); *Roberts v. Cendent Mortg. Corp.*, No. 11-CV-01438, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although the defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by one defendant to all defendants and dismiss claims against all of them).

that Plaintiff put Defendant Officers on notice of his claims by alleging a short and plain statement showing that he is entitled to relief."). Allegations directed at multiple defendants may suffice to plead personal involvement when they clearly pertain to all defendants. *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("Brooks adequately pleads personal involvement, because he specifies that he is directing this allegation at all of the defendants."). But "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

Additionally, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted). Personal liability exists where the conduct occurred at the defendant's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Here, Smith has named eleven officers as defendants. These eleven officers come from several different police departments, although they all belonged to the same Task Force. Smith specifically includes allegations about the actions that Coleman and Hope took in the investigation of the Deceased's murder and Smith's prosecution, but he otherwise lumps the Defendant Officers together, indicating that they all collectively interviewed other witnesses and concealed exculpatory information.[6] Smith then proceeds to generally refer to the "Defendant

---

[6] As for Alexander, Smith does not even include him in the list of officers who interviewed witnesses, naming him only in the caption and identifying him as a Task Force member from the Posen Police Department.

8

Officers" or "Defendants" with respect to all allegedly problematic actions that took place over the course of the investigation and prosecution, which spanned a five-year period.

Such group pleading does not suffice in this case because Smith does not provide the Moving Defendants with notice of their role in the alleged violations. *See Knight*, 725 F.3d at 818 ("Each defendant is entitled to know what he or she did that is asserted to be wrongful."); *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *2–3 (N.D. Ill. June 22, 2015) (dismissing claims premised on "group pleading" that "provides no clues as to whether, for the particular conduct described, plaintiffs assert that each and every one of the defendants engaged in that conduct . . . or whether plaintiffs instead contend that only some of the defendants, or possibly even *none* of them, performed a given act"). Given the over five-year time period and the various moving pieces of the years-long investigation and prosecution, particularly when contrasted with the specific identification of actions taken by Coleman and Hope, the Court cannot agree that Smith's generic references to "Defendant Officers" or "Defendants" suffice to place each of the Moving Defendants on notice of the actions Smith claims each of them allegedly took that give rise to his claims against them. *See Watkins v. S. Suburban Major Crimes Task Force*, No. 24 C 3555, 2025 WL 1148472, at *4 (N.D. Ill. Apr. 18, 2025) (dismissing moving officers where plaintiff only made specific allegations of misconduct against two defendants and directed the remainder of his allegations concerning his arrest, detention, and prosecution at "Defendant-Officers" as a group); *Lattimore v. Vill. of Streamwood*, No. 17 C 8683, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018) (dismissing complaint where plaintiffs named eight defendant officers and specifically alleged that one "made false statements and fabricated evidence" but "fail[ed] to identify what the other Defendant Officers did or did not do in relation to their constitutional claims"); *cf. Jackson v. Forberg*, No. 25-CV-11516, 2026 WL

9

1078562, at *12–13 (N.D. Ill. Apr. 16, 2026) (declining to dismiss complaint on group pleading grounds where the plaintiff only named two assistant state's attorneys and "allege[d] which fact witnesses each of these ASAs interacted with prior to [his] indictment").

The factual allegations in Smith's case contrast with some of the cases on which Smith relies, where, for example, the plaintiff challenged one specific incident, such as an allegedly illegal search, in which one could plausibly assume that all of the officers on the scene had some involvement. *Cf. Robles v. City of Chicago*, 354 F. Supp. 3d 873, 876 (N.D. Ill. 2019) ("Nor does this case involve disparate claims that are unlikely to have involved the entire group of defendant officers. This complaint implicates a single unit of less than a dozen officers who are alleged to have carried out an organized plan to rob the defendant by committing a single constitutional violation—conducting an unlawful search—that, by its nature, plausibly implies the involvement of numerous officers. The claim here is that the defendants—all of them— conspired together to conduct an unlawful search as a means to rob the plaintiff, and that the defendants—all of them—participated in that search and robbery."). Further, unlike some cases where a plaintiff has not had the benefit of pretrial discovery, Smith has access to his criminal case discovery, as well as any additional documents he received during his post-conviction proceedings, which should allow him to better identify the Moving Defendants' roles in the investigation and prosecution. *See Watkins*, 2025 WL 1148472, at *4 (observing that the plaintiff had information about the defendant officers' involvement from "criminal case discovery" and responses to "FOIA requests" that "should reveal which officers participated in key events such as witness interviews, report writing, and grand jury testimony"); *cf. Horton v. City of Rockford*, No. 18 C 6829, 2019 WL 3573566, at *4 (N.D. Ill. Aug. 6, 2019) (noting the difficulties in identifying the responsible parties in police misconduct cases without pretrial

10

discovery); *Kuri v. City of Chicago*, No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) (allowing the plaintiff to direct allegations at multiple defendants at the pleading stage where the plaintiff may not be aware of "which individual committed which parts of the alleged misconduct before the benefit of discovery").

As a result, Smith's claims against the Moving Defendants in their individual capacities cannot proceed as pleaded. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct."); *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018) (rejecting group pleading and bare conclusions, explaining: "liability is personal and must put each defendant on notice of their actions"). The Court dismisses Smith's claims against the Moving Defendants but gives him leave to file an amended complaint that appropriately sets forth the personal involvement of each of the named defendants.[7] *See Smith v. City of Harvey*, No. 24-CV-03611, 2025 WL 3228933, at *7–8 (N.D. Ill. Nov. 19, 2025) (dismissing claims against two detectives against whom the plaintiff included only "sparse allegations" of involvement but allowing the plaintiff to file an amended complaint that included information available to him concerning the detectives' personal involvement); *Watkins v. S. Suburban Major Crimes Task Force*, No. 24 CV 03555, 2025 WL 2761226, at *4 (N.D. Ill. Sept. 26, 2025) (finding that the plaintiff corrected group pleading issues from his prior complaint in his amended complaint by "identif[ying] which aspects of the investigation each individual officer participated in based on the information known to him" and by not directing all misconduct allegations against all defendant officers).

---

[7] In filing his amended complaint, Smith should also consider the other arguments raised by the Moving Defendants in their motions to dismiss and address them to the extent he can to avoid additional motion practice.

11

## CONCLUSION

For the foregoing reasons, the Court grants the Moving Defendants' motions to dismiss [41, 42, 64, 67]. The Court dismisses Smith's claims against Alexander, Daley, Gainer, Iverson, Montes, Nedved, Nevarez, Okon, and Randall without prejudice. The Court grants Smith leave to file an amended complaint by June 12, 2026.

Dated: May 12, 2026

SARA L. ELLIS
United States District Judge